IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 12-cv-05712 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| IMHOTEP CARTER, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Johnson claims that while in the custody of the Illinois Department of Corrections at Stateville Correctional Center ("Stateville"), he was denied proper medical care by Defendants Imhotep Carter, Darryl Edwards, and Nwadiutor Ifezue, in violation of the Eighth Amendment to the United States Constitution.[1] Accordingly, Johnson has brought this civil rights action under 42 U.S.C. § 1983 seeking monetary damages and injunctive relief. Before the Court are two motions for summary judgment—one filed by Defendant Carter and the other by Defendant Edwards. For the reasons detailed below, Defendant Carter's summary judgment motion (Dkt. No. 186) is denied and Defendant Edwards's motion for summary judgment (Dkt. No. 189) is granted.

**BACKGROUND**

Unless otherwise indicated, the following facts are undisputed. At the time of the actions alleged in Johnson's complaint, Defendant Carter was the medical director at Stateville and Defendant Edwards was an assistant warden at Stateville.

---

[1] In addition to these three Defendants, Johnson also initially named Wexford Health Services, Inc., Jane Doe Nurse, and Marcus Hardy. On August 9, 2012, Johnson's claims against Wexford Health Services, Inc. were dismissed for failure to state a claim. (Dkt. No. 6.) On February 7, 2013, Jane Doe and Marcus Hardy were dismissed as Defendants due to Johnson's lack of prosecution. (Dkt. No. 23.)

On March 25, 2012, Johnson was involved in a fight with another inmate. (Carter's Stmt. of Material Facts ¶ 4, Dkt. No. 187; Edwards's Stmt. of Material Facts ¶ 4, Dkt. No. 190.) Stateville correctional officers responded to the scene and broke up the fight, macing Johnson in the process. (Carter's Stmt. of Material Facts ¶ 34; Edwards's Stmt. of Material Facts ¶ 5.) The officers managed to restrain Johnson and place him in handcuffs. (*Id.*) As the officers were pulling Johnson's hands behind his back, Johnson heard his finger pop. (Carter's Stmt. of Material Facts ¶ 34.) After he was handcuffed, Johnson was taken to the Stateville healthcare unit where he was treated by a nurse. (Carter's Stmt. of Material Facts ¶ 11; Edwards's Stmt. of Material Facts ¶ 7.) The nurse flushed Johnson's eyes with water and a saline solution to remove the mace. (Carter's Stmt. of Material Facts ¶ 11; Edwards's Stmt. of Material Facts ¶ 8.) According to Johnson, he told the nurse that his finger hurt badly and that he had heard and felt it "pop." (Johnson's Stmt. of Add'l Facts ¶ 4, Dkt. No. 194, 196.) Johnson testified during his deposition that the nurse did not provide him with any medical treatment for his broken finger. (*Id.* ¶ 7.) Instead, he was sent to segregation after his eye treatment concluded. (Carter's Stmt. of Material Facts ¶ 11; Edwards's Stmt. of Material Facts ¶ 11.) Johnson also claims that his finger caused him extreme pain while he was in segregation and that he had trouble sleeping because of the pain. (Johnson's Stmt. of Add'l Facts ¶ 8.)

Johnson testified that he made several attempts to contact both Defendant Edwards and Defendant Carter regarding his injured finger. For example, Johnson claims that on March 27, 2012, he sent letters to sick call, Defendant Carter, and Defendant Edwards. In the letter to Defendant Edwards, Johnson wrote:

> I have written to the hospital and let them know that my finger was broken on 3/25/12 . . . I showed [the nurse] my finger, but she refused to treat my finger. I am in a lot of pain. Could you please tell someone in the hospital about my finger and tell them to see me please?

(Edwards's Stmt. of Material Facts Ex. H, Dkt. No. 190-2.) Defendant Edwards has no recollection of receiving or reading this letter. (*Id.* ¶ 17.) Nonetheless, he claims that if he had received the letter, it would have been forwarded to the health care unit administrator. (*Id.*)

The letters Johnson allegedly sent to sick call and Defendant Carter contain the following statement: "Could I please be seen because I think my finger is broken. . . . I was brought up to the hospital and the African nurse told me that the officer came first and she [refused to treat me]. I am in a lot of pain." (Carter's Stmt. of Material Facts Ex. A, Dkt. No. 187-1 at 107 of 120, 109 of 120.) According to Johnson's testimony, he sent follow-up letters to both sick call and Defendant Carter on April 6, 2012. In his letter to Defendant Carter, Johnson states:

> Could you please see me because my finger is broken. I was seen by the med-tech and showed her my finger and she said that she thought that my finger looked broken, but she refused to give me a splint or anything for my pain. . . . I am unable to sleep because of the pain I'm in.

(*Id.* at 110 of 120.) Johnson makes similar complaints regarding his broken finger in his letter to sick call. (*Id.* at 108 of 120.) But according to Defendant Carter, even if those letters were actually sent, it was not part of his responsibilities as medical director to receive sick call requests or letters from inmates; those responsibilities are delegated to other employees. (Carter's Stmt. of Material Facts ¶ 19.)

On April 10, 2012, Johnson's medical records reflect a note from a Correctional Medical Technician that Johnson was complaining about an injury to his right hand and that he needed to see a doctor. (*Id.* ¶ 18.) Johnson claims that sometime before April 20, 2012 he was called to the health care unit. (Edwards's Stmt. of Material Facts ¶ 20.) Johnson states that he was put in a segregation holding cell for approximately 30 minutes before a medical technician informed him that he would not be seen because he was not scheduled to attend the health care unit. (Johnson's

3

Stmt. of Add'l Facts ¶ 14.) Johnson claims that he showed the medical technician his swollen finger and she placed his name on the sick call. (*Id.* ¶ 15.) Afterwards, according to Johnson, while he was waiting to be returned to his cell, he saw Defendant Carter coming out of the back of the health care unit. (*Id.* ¶ 16.) According to Johnson, he stopped Defendant Carter and showed him his broken finger. (*Id.*) Defendant Carter responded: "OK. It's swollen and bent. What do you want me to do about it?" (*Id.*) Upon learning how Johnson injured his finger in a fight, Johnson asserts that Defendant Carter denied him medical treatment, saying, "Oh, you fighting with officers, I can't do nothing for you. You got what you deserve." (*Id.* ¶ 17.) Defendant Carter does not recall this conversation. (Carter's Response to Johnson's Stmt. of Add'l Facts ¶ 16, Dkt. No. 204.)

On the same day, Johnson claims to have spoken with Defendant Edwards and shown Defendant Edwards his swollen finger. (Johnson's Stmt. of Add'l Facts ¶ 18.) Johnson asked Defendant Edwards to help him get medical attention because his hand was hurting so badly he could not sleep. (*Id.* ¶¶ 18, 19.) Defendant Edwards told Johnson to wait in the hospital holding cell and he would inquire about medical treatment. (*Id.* ¶ 20.) Defendant Edwards went into the health care unit, and when he returned he told Johnson he needed to drop a sick call request into the sick call box in order to receive treatment. (*Id.* ¶ 21.)

On or around April 20, 2016—26 days after his finger was injured—Johnson was seen by a physician's assistant. An x-ray of Johnson's hand was ordered, he was prescribed Tylenol, and his finger was splinted. (Carter's Stmt. of Material Facts ¶ 13.) On April 26, 2012, the x-ray was performed and it indicated that Johnson had an "avulsion fracture base of distal phalanx at insertion of extension tendon." (*Id.* ¶ 14.) Johnson was told that his finger was broken but healing. (*Id.* ¶ 42.) Defendant Carter has testified that he reviewed the x-ray report on April 30, 2012, and

directed the physician's assistant to tape Johnson's fingers together and repeat the x-ray in ten days. (*Id.* ¶¶ 14, 15.) The second x-ray was performed on May 6, 2012 and showed an "undisplaced bone base of distal phalanx 4th finger at insertion of extension tendon." Defendant Carter has testified that he reviewed the second x-ray report. (*Id.* ¶ 16.) Johnson was seen again on May 21, 2017 for a follow-up appointment, at which time his x-rays were discussed and Johnson stated, "I'm better." (*Id.* ¶ 17.)

## DISCUSSION

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the nonmovant's favor. *See Dynegy Mkt. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks omitted).

A "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another "person within the jurisdiction of [the United States] . . . of any [constitutional] rights . . . shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Prisoners enjoy a constitutional right not to be subjected to cruel and unusual punishment. U.S. CONST. amend. VIII. That right includes "a right to adequate medical care." *See Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016).

Defendant Edwards and Defendant Carter each have filed a motion for summary judgment in this case. Only Defendant Carter argues that Johnson was not suffering from an objectively serious medical condition. Both Defendants, however, contend that summary judgment in their favors is warranted because there is no proof of deliberate indifference, as neither of them was subjectively aware of Johnson's condition nor did they consciously disregard a risk to Johnson's health or safety.

## I.     Serious Medical Condition

Defendant Carter first argues that Johnson's broken finger is not a serious medical condition. As explained by the Seventh Circuit, a serious medical condition is characterized by "the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008). A condition also may be objectively serious if a "failure to treat it could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 522 (internal quotation marks). Thus, the Seventh Circuit has found that "a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit." *Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011).

Here, Defendant Carter argues that nothing in the record indicates that Johnson's injury was objectively serious. It is undisputed, however, that an x-ray performed on April 26, 2012 indicated that Johnson had "avulsion fracture base of distal phalanx at insertion of extension tendon." (Johnson's Response to Carter's Stmt. of Material Facts ¶ 14, Dkt. No. 194.) In layman's terms, the x-ray indicated that Johnson had a broken finger. (Carter Dep. at 19, Dkt. No. 187-1.) Beyond the undisputed fact that Johnson had a broken finger, Johnson testified that this broken

6

finger was extremely painful, so much so that it prevented him from sleeping. This is sufficient evidence from which a reasonable jury could conclude that Johnson had an objectively serious medical condition. Indeed, the Seventh Circuit has recognized a variety of similar medical conditions as objectively serious. *See, e.g., Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (openly dislocated finger); *Reynolds v. Barnes*, 84 F. App'x 672, 674 (7th Cir. 2003) (broken foot); *Duncan v. Duckworth*, 644 F.2d 653, 654 (7th Cir. 1981) (broken wrist). Accordingly, Johnson has presented a genuine issue of material fact as to the objective seriousness of his condition.

## II. Deliberate Indifference

Both Defendant Edwards and Defendant Carter argue that, even if a jury could find that Johnson's condition constituted an objectively serious medical need, he has not shown that either of them acted with deliberate indifference to that need. "Deliberate indifference requires that a defendant actually know about yet disregard a substantial risk of harm to an inmate's health or safety." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017). "The standard is a subjective one: The defendant must know facts from which he could infer that a substantial risk of serious harm exists and he must actually draw the inference." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). Moreover, it is well established that "[f]or constitutional violations under § 1983 . . . a government official is only liable for his or her own misconduct." *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (internal quotation marks omitted). However, an "inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications

can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.")). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782.

### A. Defendant Carter

Johnson describes communicating his serious medical need to Defendant Carter through both in-person and written communications. He testified at his deposition that he sent two letters to Defendant Carter asking for treatment of his broken finger and describing his pain: one letter dated March 27, 2012 (two days after he broke his finger) and one dated April 6, 2012 (twelve days after he broke his finger). Nothing in the record shows that Defendant Carter read or even received the letters, however. As such, the letters alone would be insufficient to prove deliberate indifference. But those letters are not the only evidence presented by Johnson as proof of Defendant Carter's subjective awareness of his serious medical condition: Johnson also testified that he talked to Defendant Carter about his broken finger sometime before April 20, 2012. Although Defendant Carter denies that this communication occurred, a determination of whether Johnson's story is more credible than Defendant Carter's account is a job best left to the jury. Consequently, based on both the letters and the in-person communication, there is a genuine issue of fact as to whether Defendant Carter had actual subjective knowledge of Johnson's broken finger.

Defendant Carter also argues that, even if he was subjectively aware of Johnson's condition, he nevertheless cannot be held liable because there is no evidence that he acted with deliberate indifference. But "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*,

8

612 F.3d 636, 640 (7th Cir. 2010). In other words, "even if [an inmate's] condition did not worsen from the delay, deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012). "Of course, delays are common in the prison setting with limited resources." *Petties*, 836 F.3d at 730. Thus, "[d]elay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan*, 612 F.3d at 640; *accord Berry*, 604 F.3d at 442 ("[W]e do not suggest that a minor delay in treatment constitutes deliberate indifference.").

In sum, viewing the evidence in the light most favorable to Johnson, he broke his finger on March 25, 2012 but it was not treated until 26 days later. During those 26 days, Johnson's finger was extremely swollen and painful; so much so that he had trouble sleeping at night. Defendant Carter knew about Johnson's injury and pain, and had the ability to end his suffering early—either by treating Johnson himself or instructing another physician to treat Johnson. This constitutes sufficient evidence of deliberate indifference for Johnson's claim to survive a motion to dismiss. Because Johnson has presented sufficient evidence of Defendant Carter's deliberate indifference to his objectively serious medical need, Defendant's Carter's motion for summary judgment is denied.

### B. Defendant Edwards

As with Defendant Carter, Johnson claims that he informed Defendant Edwards of his serious medical need through both letters and an in-person discussion. But unlike Defendant Carter, Defendant Edwards is not a medical professional and therefore his conduct is judged by a slightly different standard. Namely, non-medical prison staff "can rely on the expertise of medical personnel. . . . [I]f a prisoner is under the care of medical experts, a non-medical prison official

9

will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *see also Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (stating that a prison warden "is entitled to relegate to the prison's medical staff the provision of good medical care"). Once alerted, however, "[n]on-medical defendants cannot simply ignore an inmate's plight." *Id.* A non-medical officer is alerted of a constitutional violation if the inmate sends a communication which, "in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). Upon receiving such a communication, the official's "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.*

Johnson has provided the following as evidence of his communications with Defendant Edwards regarding the medical staff's refusal to treat his broken finger: (1) a letter, which Johnson states he sent to Defendant Edwards, and (2) Johnson's testimony regarding an in-person communication between himself and Defendant Edwards. With regards to the letter, Defendant Edwards testified that he had no recollection of seeing or receiving this communication. Of course Defendant Edwards's lack of memory that he received the letter is not the same as testimony that he did not receive it. But even assuming that Defendant Edwards ***did*** see and read Johnson's letter, this evidence would not be sufficient to establish liability. The letter is dated a mere two days after Johnson's finger was broken and, according to the letter, after Johnson's finger injury he was immediately taken to the health care unit where he was denied treatment. After reading the letter, it would have been reasonable for Defendant Edwards to rely on the medical professional's determination that immediate treatment of Johnson's finger was unnecessary. Given that less than

10

two days had elapsed since the decision by the nurse was made, it is unreasonable to conclude that Defendant Edwards was alerted to a serious risk to inmate health and safety.

As for Johnson's in-person communication with Defendants Edwards, even assuming the conversation did occur, it also would not be enough to establish Defendant Edwards's deliberate indifference. According to Johnson, sometime before April 20, 2012, he showed Defendant Edwards his broken finger and asked Defendant Edwards to help him get medical attention. In response, Defendant Edwards went to the healthcare unit to inquire about Johnson's medical treatment, ultimately returning with the information that Johnson would not be treated until he dropped a sick call request in the sick call box. Even assuming that Johnson sufficiently alerted Defendant Edwards to a potential health risk, Defendant Edwards did in fact exercise his authority to act on Johnson's behalf. And Johnson has presented to no evidence that he followed up with Defendant Edwards later on to let Defendant Edwards know that Johnson's problems still had not been resolved. According to Johnson's own testimony, Defendant Edwards went into the healthcare unit to investigate medical treatment *in response* to Johnson's request for help. Johnson may not have liked the help that Defendant Edwards provided, but a reasonable jury could not conclude based on his actions that he deliberately disregarded Johnson's serious medical needs. Because Johnson has failed to prove deliberate indifference, Defendant Edwards's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Defendant Carter's summary judgment motion (Dkt. No. 186) is denied and Defendant Edwards's summary judgment motion (Dkt. No. 189) is granted.

ENTERED:

Dated: September 18, 2017

_____
Andrea R. Wood
United States District Judge